**Brian Bernard TEAGUE, Appellant,**

v.

**Leon MOSLEY, Individually and as a Black Hawk County Supervisor, Jack Roehr, Individually and as a Black Hawk County Supervisor, and John Rooff, Individually and as a Black Hawk County Supervisor, Appellees.**

**No. 95–611.**

Supreme Court of Iowa.

July 24, 1996.

Thomas P. Frerichs, Waterloo, for appellant.

David L. Riley of Yagla, McCoy & Riley, Waterloo, for appellees.

Considered by McGIVERIN, C.J., and LARSON, CARTER, SNELL and ANDREASEN, JJ.

LARSON, Justice.

Brian Teague filed a 42 U.S.C. § 1983 suit against three of the five members of the Black Hawk County Board of Supervisors, Leon Mosley, Jack Roehr, and John Rooff, in their individual and official capacities. Teague alleged that his civil rights were violated when he was assaulted while an inmate of the Black Hawk County jail. He claims that the supervisors violated their duties under the Iowa Code by failing to provide a safe environment at the jail. (He also sued Black Hawk County and its sheriff, but those defendants are not involved in this appeal.) The district court granted summary judgment in favor of the supervisors on the basis that they were entitled to absolute immunity. The plaintiff appealed, and we now affirm.

Teague maintains that the court erred in granting summary judgment because as a matter of law the supervisors were acting outside of the scope of their legislative immunity. He also contends that the district court should not have granted summary judgment because a factual issue existed as to whether the supervisors provided adequate funding for the "board and care" of the inmates as

provided by Iowa Code section 331.658 (1993).

## I. *Standard of Review.*

The general rules regarding our review of summary judgments are well-settled. We review them for correction of errors at law. *Carr v. Bankers Trust Co.,* 546 N.W.2d 901, 903 (Iowa 1996); *Schaefer v. Cerro Gordo County Abstract Co.,* 525 N.W.2d 844, 846 (Iowa 1994); Iowa R.App.P. 4. Summary judgment is appropriate only when the entire record shows no genuine issues of material fact and that the district court correctly applied the law. *Carr,* 546 N.W.2d at 903; *Schaefer,* 525 N.W.2d at 846; Iowa R.Civ.P. 237(c).

The moving party has the burden to show the nonexistence of a material fact. *Fischer v. UNIPAC Serv. Corp.,* 519 N.W.2d 793, 796 (Iowa 1994). The evidence is viewed in the light most favorable to the nonmoving party. *Thorp Credit, Inc. v. Gott,* 387 N.W.2d 342, 343 (Iowa 1986).

In this case, the parties disagree as to what evidence was before the district court in the summary judgment proceeding. On appeal, the plaintiff refers to depositions that the defendants contend were not included in the plaintiff's resistance to summary judgment as required by Iowa Rule of Civil Procedure 237(e). In our view of the case, however, the scope of the summary judgment record is not significant because the key issue is whether the defendants are absolutely immune from suit—a legal issue.

## II. *The Law.*

Under 42 U.S.C. § 1983, a plaintiff is entitled to damages when a "person" acting "under color of" state law, custom, or usage "subjects any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights privileges or immunities secured by the constitution and law." The definition of "person" under § 1983 is broad and has been interpreted to include local governmental bodies. *See, e.g., Monell v. New York City Dep't of Social Servs.,* 436 U.S. 658, 690, 98 S.Ct. 2018, 2035, 56 L.Ed.2d 611, 635 (1978) (municipalities

and other local governmental units); *O'Hern v. School Dist.,* 578 F.2d 220, 221 (8th Cir. 1978) (per curiam) (school boards and their individual members); *Lytle v. Commissioners of Election,* 541 F.2d 421, 426 (4th Cir. 1976), *cert. denied,* 438 U.S. 904, 98 S.Ct. 3122, 57 L.Ed.2d 1147 (1978) (county election commissioners); *cf. Will v. Michigan Dep't of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) (finding states and state officials acting in their official capacity to be "persons"). *See generally* Athena Mueller, Annotation, *Supreme Court's Views as to Meaning of Term "Person," as Used in Statutory or Constitutional Provision,* 56 L.Ed.2d 895 (1979).

However, the Supreme Court has found that the "every person" language of § 1983 was not intended to abrogate the immunities granted to persons performing certain governmental functions. *See Owen v. City of Independence,* 445 U.S. 622, 637, 100 S.Ct. 1398, 1408, 63 L.Ed.2d 673, 685, *reh'g denied,* 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980); *Rateree v. Rockett,* 852 F.2d 946, 949 (7th Cir.1988); *Gorman Towers, Inc. v. Bogoslavsky,* 626 F.2d 607, 611 (8th Cir.1980). These immunities are of two types: absolute and qualified. *Brown v. Griesenauer,* 970 F.2d 431, 435 (8th Cir.1992); *Gorman Towers, Inc.,* 626 F.2d at 611.

> Absolute immunity defeats the damage suit at the pleading stage, once it appears the actions complained of were within the immunity's scope; qualified immunity is available only if the evidence shows that those actions were taken in good faith, *i.e.,* with a reasonable belief that they were lawful.

*Gorman Towers, Inc.,* 626 F.2d at 611 (citations omitted).

The Supreme Court has ruled that members of Congress are absolutely immune from suit under the Speech and Debate Clause of the Constitution. *Forrester v. White,* 484 U.S. 219, 224, 108 S.Ct. 538, 542–43, 98 L.Ed.2d 555, 563 (1988). It has extended this immunity to several other classes of officials while they act in a legislative capacity. *See Supreme Court of Virginia v. Consumers Union of U.S., Inc.,* 446 U.S. 719, 738–39, 100 S.Ct. 1967, 1978, 64 L.Ed.2d 641,

657–58 (1980) (justices acting in legislative capacity by promulgating legal ethics code); *Lake Country Estates, Inc. v. Tahoe Regional Planning Agency,* 440 U.S. 391, 404–05, 99 S.Ct. 1171, 1178–79, 59 L.Ed.2d 401, 412–13 (1979) (members of multistate regional land-use planning agency); *Tenney v. Brandhove,* 341 U.S. 367, 376–78, 71 S.Ct. 783, 788–89, 95 L.Ed. 1019, 1027–28, *reh'g denied,* 342 U.S. 843, 72 S.Ct. 20, 96 L.Ed. 637 (1951) (state legislators).

The Supreme Court has expressly reserved the issue of whether individuals performing legislative functions at a purely local level should be given this absolute immunity, *Lake Country Estates, Inc.,* 440 U.S. at 404 n. 26, 99 S.Ct. at 1178 n. 26, 59 L.Ed.2d at 412 n. 26, but it appears likely that the Court will apply absolute immunity to those bodies as well. As one of the justices noted in *Lake Country Estates,*

> [t]o be sure, the Court expressly reserves the question whether individuals performing legislative functions at the local level should be afforded absolute immunity from federal damage claims. But the majority's reasoning in this case leaves little room to argue that municipal legislators stand on a different footing than their regional counterparts.

*Id.* at 407, 99 S.Ct. at 1180, 59 L.Ed.2d at 414 (Marshall, J., dissenting) (citation omitted).

The reasoning underlying the concept of absolute immunity was articulated in *Forrester:*

> Because government officials are engaged by definition in governing, their decisions will often have adverse effects on other persons. When officials are threatened with personal liability for acts taken pursuant to their official duties, they may well be induced to act with an excess of caution or otherwise to skew their decisions in ways that result in less than full fidelity to the objective and independent criteria that ought to guide their conduct. In this way, exposing government officials to the same legal hazards faced by other citizens may detract from the rule of law instead of contributing to it.

484 U.S. at 223, 108 S.Ct. at 542, 98 L.Ed.2d at 562–63.

■ This rationale, we believe, is applicable to county supervisors, and we adopt a rule of absolute immunity for actions taken in connection with their official duties. However, absolute immunity is only available to these defendants if they were acting in a *legislative* capacity when making the decision that allegedly resulted in harm to Teague. This is the key to the resolution of this case. The plaintiff contends that the General Assembly made the legislative decisions underlying the enactment of Iowa Code chapter 331 and that the county supervisors merely acted in an administrative or executive capacity in carrying out the mandates of that chapter. Thus, they would not be entitled to absolute immunity.

■ To determine whether officials are acting in a legislative capacity, we look to the nature of the functions with which the official has been entrusted and the effect that exposure to liability would likely have on appropriate exercise of those functions. *Forrester,* 484 U.S. at 224, 108 S.Ct. at 542–43, 98 L.Ed.2d at 563. "[I]mmunity is justified and defined by the *functions* it protects and serves, not by the person to whom it attaches." *Id.* at 227, 108 S.Ct. at 544, 98 L.Ed.2d at 565.

■ Under the code, the county board of supervisors and county sheriff share responsibility for the county jail. Iowa Code section 331.322(10) (1993) provides that the board of supervisors shall "[p]ay for the cost of board furnished prisoners in the sheriff's custody, as provided in section 331.658, appoint and pay salaries of assistants at the jails, furnish supplies, and inspect the jails." Iowa Code section 331.658 (1993) provides for the care of prisoners:

> 1. The sheriff shall provide board and care for prisoners in the sheriff's custody in the county jail without personal compensation except for the sheriff's annual salary.
>
> 2. The county shall pay the costs of the board and care of the prisoners in the county jail, which costs, in the board's judgment, are necessary to enable the sheriff to carry out the sheriff's duties

under this section. The board may determine the manner in which meals are provided for the prisoners.

3. The sheriff is accountable to the board for fees due or collected for boarding, lodging, and providing other services for prisoners in the sheriff's custody under the order of a federal court.

4. The sheriff shall allow access by the board at any reasonable time to the county jail and to supplies provided by the county for the purpose of inspecting the jail and determining whether the supplies are used for the purpose of boarding and caring for prisoners as provided in this section.

Teague argues that the policy decision to maintain a safe jail for the care of prisoners was made by the state legislature and the board of supervisors merely acted in their executive or administrative capacity in carrying out the state-mandated policies. We do not agree. The "board and care" decision is expressly left to the supervisors. The statute provides that "[t]he county shall provide board and care of the prisoners in the county jail which costs, *in the board's judgment*, are necessary...." Iowa Code § 331.658 (emphasis added).

Extending immunity to the supervisors in this context, as we do, serves the goal of protecting legislators from suits, while still providing injured parties with recourse. Because the supervisors are elected, their decisions are subject to review by their constituents. The Supreme Court has considered electoral control to be an important restraint on legislative conduct. *See Tenney*, 341 U.S. at 378, 71 S.Ct. at 789, 95 L.Ed. at 1028.

■ Teague also argues that the supervisors failed to fulfill their statutory duty to inspect the jail. *See* Iowa Code § 331.322(10) (county to "[p]ay for the cost of board furnished prisoners in the sheriff's custody ..., appoint and pay salaries of assistants at the jail, furnish supplies, and inspect the jails"). He argues that this duty involves administrative responsibilities that are not entitled to absolute immunity. *See Cinevision Corp. v. City of Burbank*, 745 F.2d 560, 580 (9th Cir.1984), *cert. denied*, 471 U.S. 1054, 105 S.Ct. 2115, 85 L.Ed.2d 480 (1985). In response, the supervisors argue that the statute, even if it had been violated, does not give rise to a private cause of action.

We reject the argument that section 331.322(10) imposes liability for damages in this case for two reasons. First, in the posture of this appeal, the plaintiff has interwoven the duty to inspect with the statutory duty to fund, as to which we have already concluded the supervisors are entitled to absolute immunity. In his reply brief, the plaintiff states in part:

> "[F]unding responsibility" of the Board of Supervisors *includes* a duty to inspect and make an accurate appraisal of the needs of the jail. Iowa Code section 331.322(10) is clear in its implication that the county board of supervisors shall fund the jail *in conjunction* with its inspection of the jails. The administrative responsibilities inherently included in the funding process require an inspection to determine the appropriate level of funding. If the interpretation of Iowa Code section 331.322(10) is read to isolate the funding and inspection responsibilities, the requirement for inspection is rendered meaningless. If the inspection is not for the purposes of determining funding needs, what is the purpose?

■ In addition, the imposition of a statutory duty does not automatically create a private cause of action. *Marcus v. Young*, 538 N.W.2d 285, 288 (Iowa 1995); *Sankey v. Richenberger*, 456 N.W.2d 206, 208–09 (Iowa 1990); *Seeman v. Liberty Mut. Ins. Co.*, 322 N.W.2d 35, 37–38 (Iowa 1982). We held in *Seeman* that the factors to be considered in determining whether a private remedy is implicit in a statutory duty are: (1) whether the plaintiff is one of the class for whose special benefit the statute was enacted; (2) whether legislative intent, explicit or implicit, suggests that a private remedy was to be created; (3) whether recognition of a private remedy would be consistent with the underlying purpose of the legislative scheme; and (4) whether the recognition of a private cause of action intrudes into any area that has been delegated explicitly to a state administrative agency. *Seeman*, 322 N.W.2d at 38–40.

Considering these factors, we conclude that the legislature did not intend to create a private cause of action for a violation of a duty to inspect under Iowa Code section 331.322(10). There is no express provision creating such a cause of action in the statute, and a reading of chapter 322 and related statutes does not suggest that such liability was intended.

The inspection language of section 331.322(10), on which the plaintiff relies, is very brief, appearing at the end of a list of several duties requiring the board to (1) pay the costs of keeping the inmates, (2) appoint and pay the jail personnel, (3) furnish supplies for the jail, and (4) inspect the jail. In fact, as already noted and as the plaintiff himself has argued, the duty to inspect appears to be merely a part of the funding—thus legislative—process.

In addition, the legislature has specifically provided for detailed inspections and standards in connection with jails. Iowa Code section 356.43 (1993) provides in part that

> [t]he Iowa department of corrections and its inspectors and agents shall make periodic inspections of each jail or municipal holding facility and all facilities established pursuant to chapter 356A, and officially notify the governing body of the political subdivision in writing to comply fully with section 356.36.

It has also provided an exclusive remedy for violations of the jail standards. Iowa Code section 356.36 provides in part that

> [t]he sole remedy for violation of a rule adopted pursuant to this section is by a proceeding for compliance initiated by request to the Iowa department of corrections. *A violation of a rule does not permit any civil action to recover damages against the state of Iowa, its departments, agents, or employees or any county, its agents or employees, or any city, its agents or employees.*

(Emphasis added.)

We conclude that a violation of a statutory duty of inspection under section 331.322(10) does not give rise to a cause of action. We conclude that these defendants are entitled to absolute immunity and therefore affirm the summary judgment for the defendants.

**AFFIRMED.**